UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES F. COCHRAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01569-JMS-DLP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### Order Denying Motion for Relief Pursuant to 28 U.S.C. § 2255 and Denying a Certificate of Appealability

For the reasons discussed in this Order, the motion of James F. Cochran for relief pursuant to 28 U.S.C. § 2255 must be **denied** and the action **dismissed with prejudice.** In addition, the Court finds that a certificate of appealability should not issue.

## I.    § 2255 Standard

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The scope of relief available under § 2255 is narrow, limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal citations omitted).

## II.    Factual Background

On February 14, 2012, Mr. Cochran was charged in a twelve-count multi-defendant Superseding Indictment. *See USA v. Cochran*, 1:11-cr-00042-JMS-DML-2 (hereinafter "Crim. Dkt."), dkt. 217.  He was charged in all twelve counts.  Count 1 charged Mr. Cochran with conspiracy to commit wire fraud and securities fraud, in violation of 18 U.S.C. § 371.  Counts 2-11 charged Mr. Cochran with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2.  Count 12 charged Mr. Cochran with securities fraud, in violation of 15 U.S.C. § 78j(b).

Mr. Cochran's jury trial began on June 11, 2012, and ended on June 20, 2012.  The jury found him guilty of counts 1, 4, 6, and 8-12, as charged in the Superseding Indictment.  *See* Crim. Dkts. 354, 379.

On August 27, 2012, the Court received a letter from Mr. Cochran that it forwarded to counsel.  Crim. Dkt. 390.  In the letter, Mr. Cochran made numerous claims of ineffective assistance of counsel regarding William Dazey and requested new counsel.  On September 25, 2012, the Court held a status conference to discuss the matters raised in Cochran's letters regarding counsel.  Crim. Dkt. 401.  After the hearing, the Court appointed additional counsel to serve as lead counsel for purposes of sentencing for Mr. Cochran and had Mr. Dazey serve as co-counsel.

On September 30, 2012, Mr. Cochran was sentenced to 25 years in prison: 5 years for count 1, 15 years for count 4, and for counts 6, and 8-12, 10 years for each count, concurrent, but consecutive to count 4 and counts 1 and 4 to run concurrently.  Crim. Dkt. 444. The Court entered an amended judgment on December 14, 2012.  Crim. Dkt. 460.

On December 17, 2012, Mr. Cochran filed a notice of appeal of his conviction and sentence.  *See United States v. Durham*, *et al.,* 766 F.3d 672 (7th Cir. 2014).  On March 27, 2013, Mr. Dazey withdrew as Mr. Cochran's counsel and, pursuant to the Criminal Justice Act, Michelle

L. Jacobs was appointed to represent Mr. Cochran in his appeal. Crim. Dkt. 490. In his appeal, Mr. Cochran challenged the sufficiency of the wiretap application; argued that the district court erroneously refused to give a proposed theory-of-defense jury instruction on the securities fraud count; claimed prosecutor misconduct during the rebuttal closing argument; and challenged several sentencing issues and the restitution order. *Durham*, 766 F.3d at 678.

On September 4, 2014, the Court of Appeals affirmed Mr. Cochran's conviction and sentence in all respects. The Court of Appeals held that 1) the affidavit supporting the wiretap application satisfied the necessity requirement; 2) there was no right to the proposed jury instruction; 3) the prosecutor did not engage in misconduct; 4) the district court's refusal to consider sentences from other districts was not procedural error; 5) sufficient evidence supported the calculation of actual loss at sentencing; and, 6) sufficient evidence supported the calculation of intended loss at sentencing. *Id.* On May 16, 2016, Mr. Cochran's petition for writ of certiorari was denied. *Cochran v. United States*, 136 S. Ct. 2035 (2016).

On May 12, 2017, Mr. Cochran filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255. The United States responded and Mr. Cochran has replied. The action is ripe for resolution.

### III. Discussion

Over the course of 33 pages of briefing, 58 pages of attached exhibits, his 15-page affidavit, and a 12-page reply, Mr. Cochran identifies a number of issues for which he seeks relief pursuant to § 2255. *See* dkt. 1, dkt. 1-1, dkt. 2, dkt. 18. He argues that: (1) his trial counsel, Mr. Dazey, provided ineffective assistance; (2) his sentencing counsel, presumably just Mr. Dazey, provided ineffective assistance; (3) his appellate counsel provided ineffective assistance; (4) the trial court erred in not appointing a different counsel for sentencing; (5) there were errors in the sentencing

calculations; (6) there were violations in sentencing because sentencing determinations were made outside his required presence and decided before the hearing began; and (7) the length of his sentence is improper given "changes in the law." Each is discussed in more detail below.

### A. Ineffective Assistance of Counsel

Apparently deeply dissatisfied with the results of the case and now retracting his previously expressed remorse, Mr. Cochran takes issue with his trial counsel, his sentencing counsel, and his appellate counsel, identifying a litany of instances he alleges his various counsel provided ineffective assistance of counsel.

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011). If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, a petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* In order to satisfy the prejudice component, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In addition, in attacking trial counsel's performance, a defendant "must 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Frentz v. Brown,* 876 F.3d 285, 293 (7th Cir. 2017) (quoting *Strickland,* 466 U.S. at 689).

1.     <u>Ineffective Assistance of Trial Counsel</u>

Mr. Cochran alleges that his trial counsel was ineffective for: (1) failing to file a motion to sever or asking for limiting instructions, dkt. 1 at 13-16; (2) failing to call certain witnesses, dkt. 2 at 10-11; (3) failing to allow him to testify, dkt. 1 at 18; and (4) failing to investigate, present favorable evidence, and conduct proper trial strategy, *id.* at 16-20.

**a.     Failing to File a Motion to Sever**

Mr. Cochran first alleges that his trial counsel was ineffective for failing to file a motion to sever his trial from that of Mr. Durham, or in the alternative, to ask for limiting instructions to the jury.  Dkt. 1 at 13-16.  Mr. Cochran argues that the overwhelming evidence and mis-use of funds was attributable to Durham, not him, but that the "jury was forced to see Cochran (and Snow) in the same light as Durham."  *Id.* at 14-15.

There is nothing inherently unlawful about trying more than one defendant at the same time, especially when, as here, the evidence established that Mr. Cochran worked in concert with Durham to manage Fair Finance ("Fair") and defraud investors.  In fact, severance under Fed. R. Crim. P. 14 is committed to the Court's sound discretion and should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States,* 506 U.S. 534, 539 (1993).  "There is a preference in the federal system for joint trials of defendants who are indicted together."  *Id.* at 537.  Joint trials promote efficiency and go far to prevent the scandal and inequity of inconsistent verdicts among codefendants.  *Id.*  A defendant is not entitled to a separate trial simply because he might have a better chance of acquittal if tried alone.  *Id.* at 540.

Here, there is no reasonable probability that a motion for severance would have been granted if it had been filed, nor is there a reasonable probability that Mr. Cochran would have been acquitted if he had been tried separately. Mr. Cochran has pointed to nothing concrete that his counsel could have relied on as a basis to request severance under these standards. He was charged in the same indictment as Durham and Snow for the same crime, and much of the evidence allegedly attributable only to Durham would still have necessarily been presented in Mr. Cochran's trial to establish count 1, conspiracy (between at least Durham, Mr. Cochran, and Snow) to commit wire fraud and securities fraud. A joint trial was the most efficient way to try this case. *See Zafiro*, 506 U.S. at 537.

In addition, Mr. Cochran has not identified any legal error in the jury instructions. Moreover, even if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and "juries are presumed to follow their instructions." *Id.* at 540 (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). The Court properly instructed the jury that the Government had "the burden of proving beyond a reasonable doubt the guilt of every defendant." Crim. Dkt. 353 at 5; Crim. Dkt. 351; Crim. Dkt. 379 at 12. The Court then instructed the jury that it must "give each defendant separate consideration" and "consider each count and the evidence relating to it separate and apart from every other count." Crim. Dkt. 353 at 19; *see also id.* at 39 ("You must give separate consideration to each defendant."). The jury was instructed that its "verdict of guilty or not guilty of an offense or as to a defendant charged in one count should not control [its] decision as to any other count." *Id.* In addition, the Court admonished the jury that opening and closing arguments are not evidence and that it should draw no inferences from a defendant's exercise of the right to silence. *Id.* at 7, 12. These instructions sufficed to cure any possibility of prejudice. *See Schaffer v. United States*, 362 U.S. 511, 516 (1960).

Accordingly, Mr. Cochran has failed to demonstrate that there was any deficient performance on the part of trial counsel nor prejudice relating to this issue.

### b. Failing to Call Certain Witnesses

Mr. Cochran next alleges that Mr. Dazey was ineffective for failing to call as witnesses Ron Kaffen, a lawyer from an Ohio law firm; two unknown male subjects from "ODS"; John Head, President of Fair from 2002 to 2008; Terry Whitesell, President of Obsidian; an unknown female restaurant manager; and Jeff Birk, an accountant. He does not attach any affidavits from these witnesses, but alleges in his own affidavit as to what he supposed their testimony would have been. Dkt. 2 at 10-11.

"The Constitution does not oblige counsel to present each and every witness that is suggested to him." *Blackmon v. Williams*, 823 F.3d 1088, 1103 (7th Cir. 2016) (internal quotation omitted). "Rather, counsel need only investigate possible lines of defense and make an informed decision." *Id*. "If counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic." *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005). Strategic decisions like these, so long as they are made after a thorough investigation of law and facts, are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

"Complaints of uncalled witnesses are not favored in federal habeas corpus review." *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987) (quoting *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984)). "[I]f potential witnesses are not called, it is incumbent on the petitioner to explain their absence and to demonstrate, with some precision, the content of the testimony they would have given at trial." *DeRobertis*, 811 F.2d at 1016. To meet this burden, "the petition must be accompanied with a detailed and specific affidavit which shows

that the petitioner had actual proof of the allegations going beyond mere unsupported assertions."

*Prewitt v. United States,* 83 F.3d 812, 819 (7th Cir. 1996).

During Mr. Cochran's sentencing hearing, the Court acknowledged that Mr. Cochran had on several occasions expressed his dissatisfaction of Mr. Durham's spending habits, but he failed to do anything, tried to get some for his own, and used his "gift of gab" to betray investors:

> THE COURT: It doesn't necessarily absolve you of any guilt, but it is clear that Mr. Durham was running the show. It is clear that Mr. Durham was spending this money as he saw fit, and it is clear that you didn't like that. And that had been going on for years, and you didn't like it. But your response to that, rather than say, and so, how does this relate to the investors of our company? ***Your response was, how can I get mine? When am I going to get mine?*** That is how it was being played out in the e-mails that came through. So that is about the nature and circumstances of the offense.
>
> Was his conduct worse than yours? Sure. Because he was -- he turned on the tap and spent this money like it was nobody's business. ***But you didn't do much better, and you were living well beyond your means.***
>
> …
>
> And your history and characteristics. You are from these people. These are people you grew up with. This was your upbringing. This is, you know, all the folks whom you defrauded were just like your family. And I say that because I have to consider sort of the nerve that you showed in lying to their faces, and you were the guy that lied. ***And then you were the guy that bragged about it in that one phone call talking about your gift of gab, and if you had that gift, you didn't use it for good, you used it for evil.***
>
> And within the victim letters, I don't know if you reviewed them, but within the victim letters a number of people recounted conversations with you where you made representations to them about the solvency of Fair and the safety of their investment, personal conversations. And in that way you were unique and you are different than Durham.
>
> ***So basically what you did is you betrayed the very people that you grew up*** -- I am not saying literally but the type of people you grew up with, the people that grew up the same way you did. And that is an upbringing that should have taught you to do better, and I think it did. You knew better. You knew better than what you were doing, but boy, doggone it, you and Mr. Durham wanted to live that lifestyle. For whatever reason, I don't know.

Crim. Dkt. 481 at 156-57 (emphasis added).

None of Mr. Cochran's proposed witnesses he alleges that Mr. Dazey failed to call (*see* dkt. 2 at 10-11) provides exculpatory or relevant information, as explained below.

- The two unknown male subjects (relating to how they saw no problems with Fair's offerings and had received no complaints against Fair) and the unknown female restaurant manager (who allegedly knew he was unhappy about Durham's use of Fair funds) remain unknown and thus would not be useful witnesses. Moreover, their testimony is not exculpatory or relevant.

- Ron Kaffen, a lawyer from an Ohio law firm, would have allegedly testified that Mr. Cochran wanted all laws and regulations to be complied with. This information is not exculpatory of Mr. Cochran's use of his "gift of gab" to defraud investors.

- John Head, President of Fair from 2002-2008, would have allegedly testified that Durham was the problem with funds being used where they should not have been. There is no dispute that Durham was the main culprit with respect to the use of funds. This information is not also exculpatory of Mr. Cochran use of his "gift of gab" to defraud investors after he already knew of the problem.

- Terry Whitesell, President of Obsidian, would have allegedly testified that Mr. Cochran complained to him about Durham's use of the funds. Again, this testimony is not exculpatory of Mr. Cochran's use of his "gift of gab" to defraud investors.

- Jeff Birk would allegedly "testify of all the money taken by Durham from the years 2002-2004 and maybe into 2005." Like the prior alleged testimony, there was no dispute as to Durham's use of the funds and this testimony would not have been exculpatory.

Mr. Cochran fails to explain how any of these witnesses would have changed the outcome of his trial. Given the duplicative and non-exculpatory nature of this proffer of testimony, Mr. Dazey's informed strategic decisions to not pursue these lines of testimony are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Moreover, Mr. Cochran fails to show, under the second prong of *Strickland*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Accordingly, Mr. Dazey's failure to call or investigate these witnesses was not ineffective assistance of counsel.

### c. Failing to Allow Him to Testify

Mr. Cochran claims he was denied effective assistance of counsel because he was not permitted to testify at his trial even though he wanted to. *See* dkt. 2 at 2, ¶¶ 4, 6; 12-13, ¶ 34; 14, ¶ 41. Mr. Cochran asserts he would have testified regarding the following:

> a. I loved the work of Fair and even had my own daughter working there.
>
> b. My family and some of my best friends invested in Fair.
>
> c. I wanted to explain the $10 million in loans and what that all meant. (Durham's idea to keep debt off the books).
>
> d. Other than Medical Collections Group, LLC, I had nothing to do with all the loans that Fair was making to Durham's other companies and his friends and other employees.
>
> e. The twisting of words and expressions by the Government that it explained to the jury from the wiretaps.
>
> f. That I hadn't conspired to run into the ground the source of my only income (and that of my daughter).
>
> g. My conversations with Durham about what was going on in the company that I knew about and the great deal of things that I did not know about.
>
> h. That at the time of the raid, the company was getting back on its feet again.
>
> i. That the Government's twist on the statements that I made about consideration to me concerned, not money as it alleged, but keeping me in the loop about money being spent.

*Id.* at 12-13, ¶ 34.

Although a defendant has a constitutional right to testify on his own behalf, Mr. Cochran must show that his attorney prevented him from testifying and that there is a reasonable probability that his failure to testify affected the outcome of the trial. *See Barrow v. Uchtman*, 398 F.3d 597,

608 n. 12 (7th Cir. 2005); *see also Alexander v. United States*, 219 Fed. Appx. 520, 523 (7th Cir. 2007) ("a defendant … must still show…that there is a reasonable probability that his failure to testify affected the outcome of the trial"); *Canaan v. McBride*, 395 F.3d 376, 385-86 (7th Cir. 2005) (explaining counsel's deficient performance regarding defendant's right to testify also must undermine confidence in outcome of trial to satisfy *Strickland*).

Here, it is not clear that Mr. Dazey prevented Mr. Cochran from testifying, nor does Mr. Cochran specifically assert such in his affidavit. Even if Mr. Cochran could show that Mr. Dazey's performance was deficient for failing to call him as a witness, Mr. Cochran fails to show that there is a reasonable probability that his failure to testify affected the outcome of the trial. There was overwhelming evidence presented by the government that, although Mr. Cochran objected to Mr. Durham of his use of the funds, Mr. Cochran went along with the scheme for his own economic benefit. *See, e.g.* Crim. Dkt. 481 at 150-154. None of Mr. Cochran's proposed testimony offers anything exculpatory and instead merely alleges, without support, that he wanted to correct the "Government's twist" on wiretaps and statements. Looking to Mr. Cochran's proposed exhibits that allegedly benefit him, some of it actually hurts him. The following is just a selection:

- Dkt. 1-1 at 20: "[I've] lived on $10K for the last 25 days……..almost a month…….paying a few bills and keeping lights on…………i don't have cash to go to Mcdonalds for my kids"

- Dkt. 1-1 at 40: "well I say it's half my fucking money" "Why are things kept from me when the money is half mine"

- Dkt. 1-1 at 42: "Cochran loan 10,379,095.00"

- Dkt. 1-1 at 43: "With all the above propositions, there is no consideration for me. I dont [sic] know where to start with that either."

- Dkt. 1-1 at 48: "Since you and I are funding every damn item in all businesses, we are now collaborating on outgoing funds……….."

- Dkt. 1-1 at 50: "…there was no benefit in it for me, except an interest percentage on a Line of Credit to FFC. I see the purchase ($1.4MM[illegible]) of US Rubber and glad its doing well, but no upside to me when it sells." "So this brings me to my feelings that it's really time (Since 2002) for me to bring in $1mm per year. In retrospect, it is time for this type compensation……..as strange as that seems from me. With the new funds it will easily support this comp. package."

As in the *Alexander* case, Mr. Cochran "ignores the reality that, had he taken the stand, he surely would have been impeached with" the multitude of emails he wrote demanding his share of the funds, "which would have weighed against his credibility." *See Alexander*, 219 Fed. Appx. at 524. Viewed against the United States' overwhelming evidence, it seems more likely that Mr. Cochran's testimony would have bolstered the jury's confidence in its guilty verdict and been interpreted as a display of Mr. Cochran's "gift of gab." *See United States v. Jocic*, 207 F.3d 889, 893 (7th Cir. 2000) (explaining that, if "defendant decides to testify and deny the charges against him and the finder of fact thinks he is lying, his untruthful testimony becomes evidence of guilt to add to the other evidence"); *United States v. Williams*, 136 F.3d 1166, 1168 (7th Cir. 1998) ("[n]ot the least of the evidence" the jury could have relied upon in finding defendant guilty was his own testimony). Thus, even if the Court credits Mr. Cochran's affidavit as proof of Mr. Dazey's deficient performance under the first prong of *Strickland*, he cannot show prejudice as required under *Strickland*'s second prong.

> **d.** **Failing to Investigate, Present Favorable Evidence and Conduct Proper Trial Strategy**

Mr. Cochran lists a litany of complaints about Mr. Dazey that in essence are for a failure to investigate and failure to follow what he believes to be a proper trial strategy. The United States terms Mr. Cochran's arguments as "throw[ing] the kitchen sink at his attorney." Dkt. 17 at 12. Mr. Cochran asserts, among other things, that:

- "there were things that should have been told to the jury that weren't. Things that Cochran should have told them";

- Certain witnesses weren't called;
- Certain documents were not retrieved;
- He wasn't permitted to testify;
- Mr. Dazey's strategy was just going to "dumb it down";
- Mr. Dazey failed to properly cross-examine government witnesses;
- Mr. Dazey's "non-belief in [Mr. Cochran's] truthful answers";
- "Dazey allowing the AUSA to rip materials out of a trial 'book' that I had prepared for our use in the trial showing a lot of well-explained and pertinent information.";
- "Dazey's refusal to put information upon the overhead projector";
- "Dazey had no 'theory-of-the-case' and no line of defense. [Cochran knew] because [he] asked him what his strategy would be before trial and he would not answer";
- Mr. Dazey's refusal to question or depose government witnesses and refusal to call any witnesses on Mr. Cochran's behalf; and
- Mr. Dazey's "apparent total unpreparedness for trial."

It is true that a defense attorney has a responsibility to reasonably investigate the circumstances of the case against his client. *See Bruce v. United States*, 256 F.3d 592, 587-89 (7th Cir. 2001). With respect to trial strategy, an attorney's trial strategy is "virtually unchallengeable" after counsel has conducted a thorough investigation of his client's case. *Sullivan v. Fairman*, 819 F.3d 1382, 1391 (7th Cir. 1987) (citing *Strickland v. Washington*, 466 U.S. at 690-91). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Mr. Cochran fails to overcome the presumption that Mr. Dazey's questioning and general defense was sound trial strategy. An attorney's duty is not to raise every conceivable defense or obstruction. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005). Although Mr. Cochran lists a litany of what he believes are improper actions by Mr. Dazey, all are listed with meager to no support and are meritless.

The Court has already dismissed Mr. Dazey's alleged failure to file a motion to sever, call certain witnesses, or allow Mr. Cochran to testify. Statements like "there were things that should have been told to the jury that weren't. Things that Cochran should have told them" without more cannot be credited because it is unclear what should have allegedly been told and how Mr. Cochran was prejudiced by Mr. Dazey's failure to have those things be told. The allegation that Mr. Dazey did not believe Mr. Cochran's allegedly truthful answers is also difficult to credit where Mr. Cochran has not explained what statements, if any, Mr. Dazey chose not to believe. Moreover, there is no constitutional right to have your attorney believe you are truthful.

Mr. Cochran alleges that Mr. Dazey's strategy was just going to "dumb it down" and that "Dazey had no 'theory-of-the-case' and no line of defense. [Cochran knew] because [he] asked him what his strategy would be before trial and he would not answer." Neither statement overcomes the presumption that Mr. Dazey had a sound trial strategy. *Frentz*, 876 F.3d at 293. Dumbing down incredibly complicated financial dealings between a network of companies over the course of many years is not, on its face, a bad trial strategy in a jury trial. Moreover, the alleged failure of Mr. Dazey to tell Mr. Cochran his trial strategy does not mean there was no theory and no line of defense. Mr. Cochran fails to proffer what alleged alternate trial strategy he believes would have been more appropriate such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Similarly, Mr. Cochran's claims that "Dazey allowing the AUSA to rip materials out of a trial 'book' that I had prepared for our use in the trial showing a lot of well-explained and pertinent information" and that Mr. Dazey refused "to put information upon the overhead projector" are unsubstantiated and without merit where Mr. Cochran fails to explain what information was not

presented and how he was prejudiced. As to the failure to put information up on the overhead projector, Mr. Cochran admits that Mr. Daezy did not want to bore the jury with information on the overhead projector and instead would just give it to them. Dkt. 2 at 3. Thus, Mr. Cochran can allege no prejudice because the jury apparently received and had access to the information.

As to Mr. Cochran's claim that Mr. Dazey failed to properly cross-examine or question government witnesses, "deciding what questions to ask a prosecution witness on cross-examination is a matter of strategy." *United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008). Courts "do not second guess the reasonable tactical decisions of counsel." *Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010). As with his other claims, Mr. Cochran fails to show how he was prejudiced or that there was a "reasonable probability that, but for counsel's errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 687.

Mr. Cochran also alleges that Mr. Dazey failed to retrieve certain documents, but as with other evidence and witness testimony proffered by Mr. Cochran, Mr. Cochran fails to show how any of these documents would be relevant or exculpatory such that the result of the proceeding would have been different.

Finally, Mr. Cochran's claim of Mr. Dazey's "apparent total unpreparedness for trial," without more cannot be credited where Mr. Dazey vigorously defended Mr. Cochran throughout his trial and at sentencing.

Mr. Cochran's efforts to point out allegedly minor errors here and there do not amount to a showing of a constitutionally deficient performance under *Strickland*, particularly when viewed in the context of counsel's overall performance. *See Brown v. Finnan*, 598 F.3d 416, 422 (7th Cir. 2010) ("it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief") (internal citations omitted). At the end of the United States' case, Mr. Dazey

moved, pursuant to *Fed. R. Crim. P*. 29(c), for a judgment of acquittal alleging insufficiency of the evidence to support convictions on any of the charges against Mr. Cochran.  Crim. Dkt. 377 at 173-74.  Mr. Durham's counsel notably did not file this motion, and Mr. Snow's counsel just adopted Mr. Dazey's motion as his own.  Although unsuccessful with his motion, Mr. Dazey ultimately successfully obtained acquittal for his client on four of the counts.  Rather than ineffective counsel, Mr. Dazey provided effective assistance of counsel.

### 2. Ineffective Assistance of Sentencing Counsel

In his petition, Mr. Cochran asserts that he is raising claims of "ineffective assistance of counsel ('IAC') both at the trial stage and at sentencing and appeal."  Dkt. 1 at 8.  However, Mr. Cochran fails to expound on how his sentencing counsel was ineffective and therefore waives any such arguments.  The Seventh Circuit has repeatedly warned that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."  *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); Fed R. App. P. 28(a)(4); *United States v. Brown*, 899 F.2d 677, 679 n.1 (7th Cir. 1990)).

The only allegation regarding ineffective assistance of sentencing counsel is in his affidavit, where he states:  "12. For sentencing, Dazey did not talk with me about Sentencing Guidelines, loss calculations, relevant conduct or any of the things that were addressed during my sentencing hearing."  Dkt. 2 at 6.  Mr. Cochran's lead counsel at sentencing was Mr. Cleary.  Because Mr. Cochran makes no statements or assertions against Mr. Cleary of ineffective assistance of counsel at sentencing, there is no need for the Court to address Mr. Cochran's perfunctory claim of ineffective assistance of sentencing counsel.

3.     <u>Ineffective Assistance of Appellate Counsel</u>

Mr. Cochran argues that his appellate counsel was ineffective for failing to raise the following issues on appeal: (1) the judge conducting part of his sentencing during Durham's sentencing without his presence; (2) the lack of any evidence suggesting the type of agreement necessary for a conspiracy; (3) the use of guidelines related to Mr. Cochran being a manager of five or more participants when only three were involved; and (4) the use of the foreseeability factor as it related to Mr. Cochran and his non-involvement with the companies where certain of the funds were funneled. Dkt. 1 at 21. However, beyond listing the issues, Mr. Cochran provides meager to no arguments as to why these issues would have been "both obvious and clearly stronger" than the issues raised. *See Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994) ("appellate counsel is ineffective if counsel fails to raise issues that are (1) obvious, and (2) clearly stronger than the ones raised"), abrogated on other grounds by *United States v. Ceballos*, 302 F. 3d 679, 692 (7th Cir. 2002).

Accordingly, Mr. Cochran's unsubstantiated claims of ineffective assistance of appellate counsel fail. *See Holm*, 326 F.3d at 877. Certain of his claims are discussed in more detail below, as relevant.

**B.     Trial Court Erred in Not Appointing a Different Counsel for Sentencing**

Mr. Cochran argues that the trial court erred in the "denial of substitute counsel for sentencing." Dkt. 1 at 22 (capitalization modified).

This claim could have been brought on direct appeal. Ordinarily, claims not raised on appeal are procedurally defaulted. *Barker v. United States*, 7 F.3d 629, 632 (7th Cir. 1993). "A § 2255 petition is not a substitute for direct appeal." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989)). However,

constitutional claims may be raised for the first time in a collateral attack if the petitioner can show cause for the procedural default and prejudice from the failure to appeal. *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). In order to show cause for a procedural default, Mr. Cochran must demonstrate that some objective factor external to the record impeded his efforts to bring a claim on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 497 (1986). If a petitioner is unable to demonstrate both cause and prejudice, he may be able to obtain habeas review only if he can persuade the court that the dismissal of his petition would result in a fundamental miscarriage of justice – that is, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495.

Mr. Cochran does not address why these claims were not brought on direct appeal and does not allege ineffective assistance of appellate counsel (despite doing so on other issues) and thus fails to show cause for the procedural default. Moreover, Mr. Cochran has failed to show prejudice or a fundamental miscarriage of justice from the dismissal of this claim.

Indeed, Mr. Cochran's claim is meritless. Based on Mr. Cochran's letter to the Court regarding his objections to Mr. Dazey's representation and Mr. Cochran's motion for hearing on status of counsel, Crim. Dkt. 396, the Court held a hearing to consider, in camera, his position on the status of appointed counsel. Based on Mr. Cochran's "express statement that he is not alleging ineffective assistance of [Mr. Dazey]," the Court concluded that the recent difficulties between Mr. Cochran and Mr. Dazey did "not rise to a level to disqualify current counsel from continued representation." Crim. Dkt. 400 (*ex parte*). Instead, the Court appointed co-counsel from the Federal Community Defender office to serve as Mr. Cochran's lead counsel, and Mr. Dazey

remained as co-counsel to ensure that his "familiarity with the case remain[ed] an available resource." *Id.*

Thus, habeas relief is unavailable to Mr. Cochran on this ground.

## C.    Errors in the Sentencing Calculations

Mr. Cochran alleges that there was a mistake in his sentence calculations. Dkt. 1 at 8. Specifically, he opposes the three-level enhancement he received pursuant to U.S.S.G. § 3B1.1 for having a role as a manager or a supervisor of an organization or scheme involving at least five individuals. *See id.* at 28-29. He alleges "there were just three criminal participants." *Id.* at 28.

A claim of error in the court's application of the Sentencing Guidelines is not cognizable in a § 2255 motion. *See Buggs v. United States*, 153 F.3d 439, 443 (7th Cir. 1998) ("errors in the implementation of the Sentencing Guidelines are generally not cognizable under collateral attack."); *Scott v. United States*, 997 F2d 340, 341-42 (7th Cir. 1993) ("[a] claim that the judge misapplied the Sentencing Guidelines does not challenge the jurisdiction of the court or assert that the judge exceeded the statutory maximum."). "It is well settled that, absent a fundamental miscarriage of justice, arguments based on the Sentencing Guidelines must be raised on direct appeal or not at all." *Allen v. United States*, 175 F.3d 560, 563 (quoting *Martin v. United States*, 109 F.3d 1177, 1178 (7th Cir. 1996) (*per curiam*)) (internal quotations removed). "[A]djusting the offense level by two or three steps is exactly the routine decision that is supposed to be handled … on direct appeal." *Id.* (internal quotations and citations removed).

In defense, Mr. Cochran asserts that "[t]o the extent that this issue should have been raised on direct appeal and wasn't, it is yet another issue laid at the feet of Cochran's <u>Strickland</u>-protected lawyer," dkt. 1 at 29, essentially attempting to recast his claim as one of ineffective assistance of

appellate counsel. *See also id.* at 21 (alleging ineffective assistance of appellate counsel on this issue).

The Seventh Circuit is "reluctant to allow prisoners to circumvent the rule against raising Sentencing Guideline arguments in collateral proceedings by recasting their Guidelines arguments as claims of ineffective assistance of counsel." *Allen v. United States*, 175 F.3d 560, 563 (7th Cir. 1999). Only "Sentencing Guidelines errors of constitutional proportion" that resulted from an ineffective assistance of counsel may be considered. *Id.* However, "an attorney's unreasonable failure to identify and bring to a court's attention an error in the court's Guidelines calculations that results in a longer sentence may constitute ineffective assistance." *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011) (citing *Glover v. United States*, 531 U.S. 198 (2001)).

The Sentencing Guidelines provides that if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels." *See* U.S.S.G. § 3B1.1(b). The Guidelines defines a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (*e.g.*, an undercover law enforcement officer) is not a participant." *Id.* at *Application Note 1*. The Guidelines also explain that "[i]n assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." *Id.* at *Application Note 3*.

During the sentencing hearing, Mr. Cochran's counsel, Mr. Dazey, vigorously opposed the three-level enhancement, arguing that the identity of the other "participants" had never been identified and therefore the number could not be established. Crim. Dkt. 481 at 43-45. The United

States countered that Mr. Cochran, as president and chairman of Fair, was the leader of Fair in Ohio and supervised his employees there. *Id.* at 48-49. The United States also identified the testimony of "Matt Ogden and Mr. DeRose who testified that they made false statements to investors about why their payments were delayed, excuses like the check is in the mail, we are having computer issues, things like that." *Id.* at 49. "And if such excuses were not accepted by the investors, they were told to escalate [the issue] to Mr. Cochran and he met with them directly." *Id.* At the Court's request, the United States also specifically identified the minimum of five participants necessary to meet this enhancement, which the Court accepted:

> THE COURT: Let's get to five. Who are the five people Mr. Dazey pointed out? ...
>
> MR. SURMACZ: Right.
>
> THE COURT: But who would you identify as the – you have mentioned DeRose and Ogden.
>
> MR. SURMACZ: I would also identify all the other investment representatives, and I think there was evidence at trial that Fair had -- off the top of my head, you know, eight to ten locations. And there are investor representatives at each of those locations, and each one of those representatives was supervised by Mr. Cochran ultimately as the president. And they were told to make similar statements to these investors when issues came up with their investments. So [] Government's position would be every one of the investor representatives would be part of the scheme.
>
> THE COURT: Okay.

*Id.* at 49-50. Mr. Cochran does not refute the United States' identification of the five or more participants, or that the criminal activity was otherwise extensive, causing over $200 million in harm, *see Durham*, 766 F.3d at 687. Thus, the Court's imposition of the 3-level enhancement was appropriate.

Because there was no error in the Court's application of the three-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(4), Mr. Cochran's appellate counsel could not be deficient for failing to appeal a meritless claim and did not therefore provide ineffective assistance of counsel

here. *Faucett v. United States,* 872 F.3d 506, 512 (7th Cir. 2017) ("Refraining from a meritless sentencing argument cannot be characterized as objectively unreasonable."); *see also Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005) (An attorney's duty is not to raise every conceivable defense or obstruction, for a "lawyer has an obligation to be truthful and forthright with the court, [and] he has no duty to make a frivolous argument."); *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) ("Appellate counsel is not required to present every non-frivolous claim on behalf of h[is] client. … [A]ppellate counsel's performance is deficient under *Strickland* only if []he fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised.")

### D. Lack of Presence at Sentencing

Mr. Cochran objects to factual sentencing determinations that were apparently made outside his presence. Dkt. 1 at 9, 23-25. Mr. Cochran asserts that the Court had discussions with his counsel, Mr. Dazey, without his presence to discuss certain allegedly factual sentencing issues, including the amount of loss and the role of the offense. *Id*. at 24. Mr. Cochran believes that these "fact discussions" occurred during Durham's sentencing. *Id.* at 25 (citing Crim. Dkt. 481 at 21, 43).

Mr. Cochran's claim relates to an alleged violation of Rule 43 of the *Federal Rules of Criminal Procedures*. Criminal defendants have a right to be present at sentencing. Rule 43(a)(3) of the *Rules of Criminal Procedure.* "The Fifth and Sixth Amendments also protect a criminal defendant's right to be present at all stages of the trial." *United States v. Martin,* 777 F.3d 984, 990 (8th Cir. 2015) (internal quotation omitted). If a court conducts a proceeding in violation of a defendant's right to be present, such a violation is subject to harmless error analysis. *Id.* at 991. Rule 43(b)(3) provides that a defendant need not be present at a proceeding that "involves only a conference or hearing on a question of law." *Id.*

Like certain of Mr. Cochran's other claims, this claim should have been brought on direct appeal, and because he has failed to do so, the claim is procedurally defaulted. *See Barker,* 7 F.3d at 632. Mr. Cochran is barred from raising these claims in his § 2255 proceeding because he has failed to demonstrate cause and prejudice for the default. *Frady*, 456 U.S. at 167-68; *McCleese*, 75 F.3d at 1177. Although Mr. Cochran asserts that his appellate counsel was ineffective for failing to raise this issue, *see* dkt. 1 at 21, he provides no argument or evidence in support of this issue beyond this brief statement, and thus the argument is waived. *See Holm*, 326 F.3d at 877. Mr. Cochran also fails to show that dismissal of the claims would result in a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495.

Even if Mr. Cochran could make the appropriate showing to avoid procedural default, his argument fails. It appears that Mr. Cochran is alleging he was not present during the first two hours of the sentencing hearing during which Mr. Dazey raised legal arguments about the appropriate amount of loss attributable to Mr. Cochran and Mr. Cochran's role in the offense. *See, e.g.*, Crim. Dkt. 481 at 21-23, 41-45, 72-73. The Court notes as an initial matter that Mr. Dazey made no arguments during Durham's sentencing. *See id.* at 104-138.

Due to the particular nature of the case, the sentencing hearing proceeded under a special schedule in which the first two hours were reserved for parties to "present arguments on objections to the Presentence Report," Crim. Dkt. 423; Crim. Dkt. 481 at 4:21-25, a procedure generally done primarily in written form. No decisions about sentencing were made during this portion of the hearing. The Judge was merely listening to oral argument on previously submitted objections. *See, e.g.*, Crim. Dkt. 481 at 74:24-75:5 ("THE COURT: Thank you. Okay. Let's take ten until 11:00, and then the Government can begin with its presentation. I need to mull some things that were presented this morning that were beyond the papers.") Moreover, Mr. Cochran was present

for, at least, some portion of this part of the hearing. *See* Crim. Dkt. 481 at 63:22-64:1 ("THE COURT: … Same for you. Mr. Cochran, you had the chance to review the PSR, the objections made by your counsel, and the memorandum submitted on your behalf? DEFENDANT COCHRAN: Yes."). Later, during his portion of the sentencing, Mr. Cochran was present and had the opportunity to address the judge personally and make any necessary objections. Crim. Dkt. 481 at 139-165.

The Seventh Circuit has previously rejected the suggestion that a defendant must be present during oral arguments related to the presentencing report prior to sentencing where the sentencing decisions were not made until after the actual sentencing proceedings in court and the defendant was present on the day of sentencing itself:

> Thomas was in court, and exercised his opportunity to address the judge personally, on the day of sentencing, and the judge's earlier opinion (step 5) specified that nothing it contained was definitive.
>
> …Rule 43(b)(3) says that a defendant's presence is not required for the consideration of legal issues. Judges regularly hear argument and rule on issues such as the sufficiency of the indictment (Rule 12(b)(3)(B)) and contested matters such as discovery (Rule 16) outside the defendant's presence.
>
> …
>
> Criminal defendants are entitled under the Due Process Clause to be present when that is essential to "a fair and just hearing", *United States v. Gagnon*, 470 U.S. 522, 526 (1985), but representation by counsel suffices when presenting legal arguments to a judge and discussing what issues require hearings.

*United States v. Thomas*, 815 F.3d 344, 346 (7th Cir. 2016). A review of the arguments made by Mr. Cochran's counsel during the first two hours of the sentencing hearing shows only legal arguments, and thus, Mr. Cochran's presence, even though he was present, was not required. Thus, Mr. Cochran is mistaken regarding his alleged lack of presence at sentencing.

### E.    Judicial Misconduct

Mr. Cochran apparently also believes that the Court had already made its decision as to Mr. Cochran's sentence before the start of the hearing based on an alleged conversation between Mr. Cochran and Mr. Dazey in which Mr. Dazey told Mr. Cochran he would receive 25 years in prison and he "just knew."  *Id.* at 25.

> 23.  On the day of sentencing, November 30, 2012, while waiting for the hearing to start, I told Dazey that I heard that Durham got 50 years. He confirmed that and after I said that "I'll probably get 40 [years]," he responded, "No, you're getting 25 years." I asked him, "How do you know that." He stated, "I just know." This was before my allocution, any argument from Dazey or the hearing to even start. The decision, according to what Dazey told me, was already determined.

Dkt 2 at 8, ¶ 23.  Such an allegation is essentially one of judicial misconduct where he alleges that the Court had already made a decision prior to sentencing.

Mr. Cochran failed to raise a claim of judicial misconduct on appeal, and thus, has procedurally defaulted these claims.  *See Barker,* 7 F.3d at 632.  Mr. Cochran is barred from raising these claims in his § 2255 proceeding because he has failed to demonstrate cause and prejudice for the default.  *Frady*, 456 U.S. at 167-68; *McCleese*, 75 F.3d at 1177.  Although Mr. Cochran asserts that his appellate counsel was ineffective for failing to raise this issue, *see* dkt. 1 at 21, he provides no argument or evidence in support of this issue beyond this brief statement, and thus the argument is waived.  *See Holm*, 326 F.3d at 877.  Mr. Cochran also fails to show that dismissal of the claims would result in a fundamental miscarriage of justice.  *Murray*, 477 U.S. at 495.  Even had Mr. Cochran not defaulted this claim, habeas relief would still have been unavailable on this ground because his claim is meritless.  Mr. Cochran's sole support for his allegation is an alleged

conversation with his attorney that could be construed as an informed opinion based on his attorney's years of experience representing criminal defendants in court. The record reflects no discussion in which the Court previously decided on a sentence of 25 years prior to sentencing and Mr. Cochran fails to identify any specific judicial misconduct. Indeed, Mr. Cochran's counsel argued for a sentence less than 23 years during the sentencing hearing, reflecting, at most, an understanding before the hearing of not 25 but 23. Crim. Dkt. 481 at 148 ("But we do think a sentence that exceeds 23 years, a sentence of life is one that should be given sparingly, and we would ask the Court to fashion a sentence that does not do that here and to come down -- that a line has to be drawn, and we would ask that the line be drawn somewhere on the other side of that."). Accordingly, habeas relief is not available on this ground.

### F.      Propriety of Sentence Length

Mr. Cochran asserts that the length of sentence is improper in view of "changes in the law" under *United States v. Booker*, 543 U.S. 220 (2005), and *Ring v. Arizona*, 536 U.S. 584 (2002). Dkt. 1 at 9, 29-32. Mr. Cochran asserts that his sentence was "extremely out-of-line with similar defendants convicted of the same offenses in the same dollar amount level" and disputes the loss calculation. *Id.* at 31-32.

First, there is no intervening change in the law. Mr. Cochran was sentenced in 2012, well after *Booker* and *Ring* were decided.

Second, Mr. Cochran already raised these issues on appeal, and thus these arguments are foreclosed by the law of the case. *See Fuller*, 398 F.3d at 648 ("In the context of § 2255 petitions, the law of the case doctrine dictates that once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it.)

(internal citations and quotations omitted). The Seventh Circuit previously explicitly rejected Mr. Cochran's assertion that his sentence was improperly long or that the loss calculation was improperly determined. *Durham*, 766 F.3d at 685-88.

Even if Mr. Cochran's argument was not foreclosed, as previously explained, a claim of error in the court's application of the Sentencing Guidelines is not cognizable in a § 2255 motion. *See Buggs*, 153 F.3d at 443. Thus, habeas relief is not available to Mr. Cochran on this ground.

## IV. Denial of Hearing

An evidentiary hearing is "not required when 'the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Lafuente v. United States,* 617 F.3d 944, 946 (7th Cir. 2010) (quoting 28 U.S.C. § 2255(b)). That is the case here. A hearing is not warranted under these circumstances.

## V. Conclusion and Certificate of Appealability

For the reasons explained in this Entry, Mr. Cochran is not entitled to relief on his § 2255 motion. There was no ineffective assistance of counsel, no errors in the sentencing proceedings or calculations, and no judicial misconduct. Accordingly, his motion for relief pursuant to § 2255 is **denied** and this action is dismissed with prejudice. Judgment consistent with this Entry shall now issue and **a copy of this Entry shall be docketed in No. 1:11-cr-00042-JMS-DML-2.**

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Cochran has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 5/16/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JAMES F. COCHRAN
09970-028
LEXINGTON - FMC
LEXINGTON FEDERAL MEDICAL CENTER
Inmate Mail/Parcels
P.O. BOX 14500
LEXINGTON, KY 40512

Winfield D. Ong
UNITED STATES ATTORNEY'S OFFICE
winfield.ong@usdoj.gov