UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:11-cr-00042-JMS-DML-02 |
| v. | ORDER ON MOTIONS FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| JAMES F. COCHRAN | (COMPASSIONATE RELEASE) |

Upon motions of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motions are:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11-cr-00042-JMS-DML |
| | ) | |
| JAMES F. COCHRAN, | ) | -02 |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant James Cochran has filed motions seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkts. 590, 614. Mr. Cochran asks the Court to reduce his sentence to time served. Dkt. 614 at 19. For the reasons explained below, his motions are **DENIED**.

**I.   Background**

In 2012, a jury found Mr. Cochran guilty of one count of conspiracy to commit wire fraud and securities fraud, in violation of 18 U.S.C. § 371; six counts of wire fraud, in violation of 18 U.S.C. § 1343 and 2; and one count of security fraud, in violation of 15 U.S.C. § 78j(b). Dkt. 354. Mr. Cochran appealed, and the Seventh Circuit affirmed his conviction and sentence. The Seventh Circuit summarized Mr. Cochran's crimes as follows:

> Timothy Durham, James Cochran, and Rick Snow were convicted of perpetrating a widespread financial fraud that caused more than $200 million in losses to thousands of victims, many of them elderly or living on modest incomes. After taking control of Fair Finance Company, a previously well-established and respected business, the trio quickly turned it into their personal piggy bank. They used money invested in Fair to support their lavish lifestyles and to fund loans to related parties that would never be repaid. When the company's auditors raised red flags about its financial status, the auditors were fired. When Fair experienced cash-flow problems, it misled investors and regulators so it could keep raising capital.
>
> Eventually the scheme began to unravel. One of the company's directors, himself under investigation in a separate matter, alerted the FBI that Fair was being operated as a

> Ponzi scheme. After an investigation, the FBI seized Fair's computer servers and arrested Durham, Cochran, and Snow. A jury convicted them on various counts of conspiracy, securities fraud, and wire fraud.

*United States v. Durham*, 766 F.3d 672, 675–76 (7th Cir. 2014).

In December 2012, the Court sentenced Mr. Cochran to an aggregate sentence of 25 years of imprisonment and 3 years of supervised release. Dkts. 444, 460. The Court also ordered Mr. Cochran to pay more than $200 million in restitution. Dkt. 460. Mr. Cochran appealed, and the Seventh Circuit affirmed his conviction and sentence. *Durham*, 766 F.3d at 688. Mr. Cochran has been in custody since June 2012, and the Bureau of Prisons ("BOP") gives Mr. Cochran's projected release date (including good-time credit) as October 5, 2033. That is, with good-time credit, Mr. Cochran has served about 41% of his sentence.

Mr. Cochran is 65 years old. He is currently incarcerated at USP Yazoo City. As of April 13, 2021, the BOP reports that 3 inmates and 7 staff members at USP Yazoo City have active cases of COVID-19; it also reports that 240 inmates at USP Yazoo City have recovered from COVID-19 and that 1 inmate at USP Yazoo City has died from the virus. https://www.bop.gov/coronavirus/ (last visited Apr. 13, 2021). The BOP has also actively begun vaccinating inmates against COVID-19. *Id.* As of April 13, 2021, 310 staff members and 855 inmates at FCC Yazoo City (which includes USP Yazoo City) have been fully inoculated against COVID-19. *Id.*

In July 2020, Mr. Cochran filed a pro se motion for compassionate release. Dkt. 590. The Court appointed counsel. Dkt. 591. Mr. Cochran submitted a pro se supplement, dkt. 605, and multiple people submitted letters of support, dkts. 606–613. Counsel filed a supplemental motion, dkt. 614, the United States responded, dkt. 616, and Mr. Cochran filed a pro se reply, dkt. 619. Mr. Cochran then submitted three pro se supplements. Dkts. 620, 621, 623. Thus, his motions are ripe for decision.

## II. Discussion

Mr. Cochran seeks reduction of his sentence to time served and immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Originally, Mr. Cochran argued that his age and medical conditions (including COPD and other lung diseases) put him at an increased risk of experiencing severe symptoms if he contracted COVID-19 and that he could not protect himself from the virus while in custody. Dkt. 590. He also argued that he would not be a danger to the community if released and that the sentencing factors in 18 U.S.C. § 3553(a) favored release, emphasizing that he has had good conduct while in the BOP, has completed numerous programs, is enrolled in an apprenticeship, and has experienced a religious conversion. *See, e.g.*, dkts. 590, 614; 621-1.

In response, the United States did not dispute that Mr. Cochran had exhausted his administrative remedies or that Mr. Cochran's medical condition put him at higher risk of experiencing severe COVID-19 symptoms. Dkt. 616 at 7 n.6, 8–10. It argued, however, that Mr. Cochran would pose a danger to the community if released and that the sentencing factors in § 3553(a) do not favor release. Dkt. 445.

In his pro se reply, Mr. Cochran noted that he tested positive for COVID-19 in November 2020, was placed in isolation, and was hoping that his lungs did not become involved. Dkt. 619.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First

4

Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G.

§ 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in

Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

Mr. Cochran does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him.[1] Instead, he asks the Court to exercise its broad discretion to find that extraordinary and compelling reasons warrant immediate release in his case.[2]

The Court declines to find extraordinary and compelling reasons warranting a sentence reduction in this case. Although Mr. Cochran has conditions that increase his risk of experiencing severe symptoms from COVID-19, *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 9, 2021) (identifying chronic lung diseases, including COPD, as conditions that can make you more likely to get severely ill from COVID-19), he contracted COVID-19 in November 2020. He does not claim to have suffered from

---

[1] In his original pro se motion, Mr. Cochran suggested in passing that Subsection (B) applied, stating that he was "suffering from a serious physical medical condition and is experiencing deteriorating physical health because of the aging process that substantially diminishes his ability to provide self-care within the environment of a correctional facility." Dkt. 590 at 7. Counsel did not renew this argument in the supplemental motion, and the Court considers it abandoned. Regardless, there is no evidence that Mr. Cochran's health conditions have limited his ability to provide self-care. While the nature of prison life may make it difficult for him to protect himself from COVID-19, such is a feature of prison life, not a consequence of his health conditions. Likewise, there is no evidence that Mr. Cochran is limited in feeding himself, clothing himself, or engaging in other daily self-care activities.

[2] In keeping with the Seventh Circuit's instruction in *Gunn*, 980 F.3d at 1180–81, the Court would typically consider the warden's rationale in denying Mr. Cochran's administrative remedy. However, the warden reviewed Mr. Cochran's request before he had contracted COVID-19. Thus, the warden's decision provides little guidance to the Court's analysis.

severe symptoms, or to have suffered from any symptoms at all. The Court has received several updates from Mr. Cochran, but none suggesting that he is continuing to suffer from debilitating symptoms or that the BOP is unable to provide care for any such symptoms. Thus, he has not shown extraordinary and compelling reasons warranting a sentence reduction. *See, e.g.*, *United States v. Weatherspoon*, No. 2:11-cr-9-JMS-CMM-07, dkt. 894 (S.D. Ind. July 7, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had been hospitalized after testing positive for COVID-19, but had since recovered); *United States v. Wyatt*, No. 3:17-cr-11-RLY-MPB-02, dkt. 165 (S.D. Ind. Sept. 3, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had tested positive for COVID-19 but remained asymptomatic); *United States v. Young*, No. 3:15-cr-38-RLY-CMM-03, dkt. 139 (denying motion to reconsider and finding no extraordinary and compelling reason warranting release where defendant claimed to be experiencing chest pains and difficulty breathing several months after his COVID-19 diagnosis because the symptoms were not severe or debilitating).

Any potential concern about reinfection in the future does not change the result. The Court recognizes that USP Yazoo City previously experienced a serious outbreak of COVID-19 and that some inmates and staff members have current COVID-19 infections. Nonetheless, any reliance on the possibility that Mr. Cochran will be reinfected and suffer severe symptoms is speculative. *See* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited Apr. 9, 2021) ("Cases of reinfection of COVID-19 have been reported but are rare."). To date, this Court has declined to find extraordinary and compelling circumstances warranting a sentence reduction when a defendant has recovered from COVID-19—even when that defendant has risk factors for severe symptoms. *See*, *e.g.*, *Wyatt*, No. 3:17-cr-11-RLY-MPB-02, dkt. 165 (S.D. Ind. Sept. 3, 2020); *United States v. Gevirtz*, No. 1:17-cr-68-RLY-MJD-01, dkt. 68 (S.D. Ind. Sept. 14, 2020); *United States v.*

*Young*, No. 1:10-cr-3-SEB-DML-17, dkt. 1540 (S.D. Ind. July 27, 2020). The fact that the BOP is now actively vaccinating inmates against COVID-19—including at FCC Yazoo City—only underscores the speculative nature of any concern about reinfection.

To the extent Mr. Cochran's pro se submissions can be read to include complaints about the way the BOP has handled the COVID-19 pandemic and the BOP's failure to provide medical care, such complaints might conceivably support a civil suit in his district of confinement, but they do not represent an extraordinary and compelling reason to release him from incarceration more than 12 years early.

Given the Court's determination that Mr. Cochran has not shown extraordinary and compelling reasons to justify his release, whether the 3553(a) factors weigh in favor of his release need not be discussed at length. Nonetheless, the Court concludes that they weigh against release. In his favor, Mr. Cochran has maintained good conduct while incarcerated, has completed several programs, is enrolled in an apprenticeship, and has a minimal prior criminal history. Mr. Cochran also appears to have the support of many people and professes a newfound commitment to religion and remorse for his crimes. He also represents that the BOP has found him to present a minimum risk of recidivism.

But other facts weigh heavily against him. Mr. Cochran was the number-two defendant in a massive Ponzi scheme. He and his co-defendants bilked thousands of investors out of hundreds of millions of dollars, causing many victims to experience financial ruin. *See, e.g.*, dkt. 421 at 15–18. Such crimes warrant a very serious punishment. Mr. Cochran has, however, served less than half of his sentence and is not set to be released for more than 12 years.

In light of these circumstances, the Court finds that releasing Mr. Cochran now would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; or afford adequate deterrence to criminal conduct. That is, the Court cannot find that the

9

magnitude of the risk Mr. Cochran currently faces from the COVID-19 pandemic warrants releasing him from incarceration at this time. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (affirming denial of motion for compassionate release where district court found that § 3553(a) factors weighed against release despite COVID-19 risk because defendant committed serious offense and had only served one-third of sentence); *United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating a motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

### III.    Conclusion

For the reasons stated above, Mr. Cochran's motions for compassionate release, dkt. [590] and [614], are **denied**.

**IT IS SO ORDERED.**

Date: 4/15/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel